ADRIAN O. VANDERVORT, Plaintiff, *v.* THE CITY OF TROY and Others, Defendants.

Supreme Court, Rensselaer County, July 9, 1927.

**Municipal corporations — city planning commission — location of garbage incineration plant outside city need not be referred to commission, under General Municipal Law, § 236 — allegations in complaint not sufficient to sustain injunction in taxpayer's action under General Municipal Law, § 51.**

It is not necessary to refer to a city planning commission, under section 236 of the General Municipal Law, the location of a garbage incineration plant where said plant is to be located outside the limits of the city, for a garbage incineration plant is not such a structure as is included in the general powers provided in section 236 of the General Municipal Law.

Moreover, if the location of the plant was required by said law to be referred to the city planning commission, the complaint is insufficient to support the continuance of an injunction granted in a taxpayer's action brought under section 51 of the General Municipal Law, since the only allegations are as to the illegality of the proposed location of the plant and mere conclusions of law based on said illegality and not based on any facts to support them that the proposed location and construction would constitute waste of the property of the city of Troy.

MOTION to continue injunction *pendente lite.*

*John T. Norton*, for the plaintiff.

*Edward J. Donohue, Corporation Counsel*, for the defendant.

NICHOLS, J. The city of Troy, by an ordinance adopted May 5, 1921, created a city planning commission pursuant to the provisions of article 12-A of the General Municipal Law. Section 236 of the General Municipal Law (added by Laws of 1913, chap. 699) provides for the general powers of such commission, as follows:

" § 236. General powers. The body creating such planning

commission may, at any time, by ordinance or resolution, provide that the following matters, or any one or more of them, shall be referred for report thereon, to such commission by the board, commission, commissioner or other public officer or officers of said city or village which is the final authority thereon before final action thereon by such authority: the adoption of any map or plan of said city or incorporated village, or part thereof, including drainage and sewer or water system plans or maps, and plans or maps for any public water front, or marginal street, or public structure upon, in or in connection with such front or street, or for any dredging, filling or fixing of lines with relation to said front; any change of any such maps or plans; the location of any public structure upon, in or in connection with, or fixing lines with relation to said front; the location of any public building, bridge, statue or monument, highway, park, parkway, square, playground or recreation ground, or public open place of said city or village. In default of any such ordinance or resolution all of said matters shall be so referred to said planning commission.

" The body creating such planning commission may, at any time, by ordinance or resolution, fix the time within which such planning commission shall report upon any matter or class of matters to be referred to it, with or without the further provision that in default of report within the time so fixed, the planning commission shall forfeit the right further to suspend action, as aforesaid with regard to the particular matter upon which it has so defaulted. In default of any such ordinance or resolution, no such action shall be taken until such report is so received, and no adoption, change, fixing or location as aforesaid by said final authority, prior thereto, shall be valid. No ordinance or resolution shall deprive said planning commission of its right or relieve it of its duty, to report, at such time as it deems proper upon any matter at any time referred to it.

" This section shall not be construed as intended to limit or impair the power of any art commission, park commission or commissioner, now or hereafter existing by virtue of any provision of law, to refuse consent to the acceptance by any municipality of the gift of any work of art to said municipality, without reference of the matter, by reason of its proposed location or otherwise, to said planning commission. Nor shall this section be construed as intended to limit or impair any other power of any such art commission or affect the same, except in so far as it provides for reference or report, or both, on any matter before final action thereon by said art commission."

The defendant Charles F. Crowley is the commissioner of public

works of the city of Troy. On February 17, 1927, the common council of the city of Troy adopted a resolution to borrow $175,000 for the purpose of acquiring a site for the erection thereon of a garbage incineration plant and thereafter Commissioner Crowley purchased a parcel of land for the purpose of such garbage incineration plant located in the town of Brunswick, Rensselaer county, for the sum of $9,000. A deed of said property was executed by the owner thereof and presented to the board of estimate and apportionment and said board duly accepted the same. No resolution or ordinance has ever been adopted by the city of Troy to submit to the city planning commission duly appointed pursuant to the ordinance which created the same, for its approval or disapproval of the location of said garbage incineration plant. The complaint of the plaintiff further alleges that the erection of the garbage incineration plant and sale of the bonds of the city of Troy for the purpose of paying therefor will constitute illegal official acts and an illegal expenditure and waste of funds of the city of Troy and an injury to plaintiff and other taxpayers of said city, the plaintiff being a taxpayer and bringing this action under section 51 of the General Municipal Law.

The proposed garbage incineration plant will be located outside of the city. There is no allegation in the complaint of any fraud or corruption in the purchase of the land by the commissioner of public works or in the proposed construction or expenditure of public funds therefor; and no allegation that the proposed construction of the proposed garbage incineration plant for the use of said commissioner of public works is not necessary; or that any city official is corruptly interested in the transaction.

There are two clauses in said section 236 of the General Municipal Law; the 1st clause relating to " the adoption of any map or plan of said city * * * or part thereof, including drainage and sewer or water system plans or maps, and plans or maps for any public water front, or marginal street, or public structure upon, in or in connection with such front or street, or for any dredging, filling or fixing of lines with relation to said front."

It is perfectly apparent that the location of a garbage incineration plant has nothing to do with and is not included in the foregoing powers.

The fourth clause of said section provides for " the location of any public building, bridge, statue or monument, highway, park, parkway, square, playground or recreation ground, or public open place of said city or village." If the erection of the garbage incineration plant was required to be referred to the city planning commission, it must have been required pursuant to the provisions

of the clause above referred to, all of which relates to buildings or structures, parks, etc., which are used by the public. It cannot be claimed that because the city owns the site for the garbage incineration plant proposed to be erected for the use of the commissioner of public works, that it would be a public building in any sense of the word; it would be a plant of the commissioner of public works just the same as a building that might be erected for the storage of tools used by the commissioner or of materials used in the discharge of his duties. The general words used in said section followed by particular words in the fourth clause, limit the general words to a class of those specifically mentioned. In *Burks* v. *Bosso* (180 N. Y. 341) the court says: " The phrase referred to, although general in its nature, is limited and qualified by the specific designations which precede it."

I, therefore, decide that a garbage incineration plant, located outside the city of Troy, is not such a structure as is included in the general powers provided in section 236 of the General Municipal Law; and, therefore, the location of said garbage incineration plant was not required by said act to be referred to the city planning commission. Even if its location was required by said act to be referred to the city planning commission, the only allegations in the complaint being as to the illegality of the proposed action in the location and mere conclusions of law based on said illegality and not based on any facts to support them that the proposed location and construction of said garbage incineration plant would constitute waste of the city of Troy, would require the court to deny the continuance of the injunction. In *Western New York Water Company* v. *City of Buffalo* (242 N. Y. 202, 206) the court says: " Mere illegality is not enough. The very nature and purpose of a taxpayer's action like the present one presume that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests and that if permitted to continue it will in some manner result in increased burdens upon and dangers and disadvantages to the municipality and to the interests represented by it and so to those who are taxpayers. It was not the intention of the statute that a taxpayer shall be allowed to intervene and bring to the decision of the courts every act of a municipal officer which may be claimed to be illegal although concededly it is entirely innocuous. There are other penalties than a taxpayer's action for those municipal officers who disregard their responsibilities and transgress their limitations."

The temporary injunction heretofore granted must be vacated and continuance of same denied, with ten dollars costs.